IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS STOCK | : | |
|     Plaintiff, | | |
| | | |
| v. | : | |
| | | CIVIL ACTION |
| CHANELLE BRASWELL, *individually* | | NO. 16-6412 |
| *and in her official capacity as an agent* | : | |
| *of the Pennsylvania Board of Probation* | | |
| *and Parole*; and, PENNSYLVANIA BOARD | | |
| OF PROBATION AND PAROLE | : | |
|     Defendants. | | |

**MEMORANDUM**

**Jones, II   J.**                                                                                           **August 1, 2017**

**I.        Introduction**

Plaintiff Francis Stock brings the above-captioned action, alleging Defendants,[1] Parole Officer Chanelle Braswell[2] and Pennsylvania Board of Probation and Parole—as agents of the Commonwealth of Pennsylvania—are liable under 42 U.S.C. § 1983 for violating Plaintiff's Fourth and Fourteenth Amendment constitutional rights by unlawfully arresting him and denying him due process before restricting his liberty (Count I).  Plaintiff's Complaint further asserts

---

[1] Although, at the time of motion, Officer Braswell and Pennsylvania Board of Probation and Parole ("PBPP") were both defendants, Plaintiff agreed to dismissal of PBPP and Officer Braswell in her official capacity in his response to Defendants' Motion to Dismiss.  Thus, the only remaining defendant is Officer Braswell in her individual capacity.

[2] Defendants apparently erroneously included the name of a defendant Buch, not named in this suit, in their memorandum in support of their motion to dismiss. (Defs.' Mem. 11.)

various state law claims[3] including unlawful arrest (Count IV), false imprisonment (Count V), malicious prosecution (Count VI), and, in the alternative, negligent infliction of emotional

---

[3] Plaintiff includes a Second Cause of Action subtitled "State Law Claims." (Compl. ¶¶ 55-60.) Said cause of action is essentially a summary of both the federal and state claims contained within Plaintiff's First, and Third through Seventh, Causes of Action. In and of itself, Plaintiff's Second Cause of Action does not present one cognizable claim, as required by Federal Rule of Civil Procedure 10:

> Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.

Fed.R.Civ.P. 10(b).

To this end,

> Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). This may be done by the court *sua sponte* or on a motion filed by a party. Fed. R. Civ. P. 12(f)(1)-(2). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). These motions "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case." *United States v. Kramer*, 757 F. Supp. 397, 410 (D.N.J. 1991).

*Lakeview Pharm. of Racine, Inc. v. Catamaran Corp.*, Civil Action No. 3:15-290, 2017 U.S. Dist. LEXIS 49077, at *12-13 (M.D. Pa. Mar. 31, 2017).

The "Second Cause of Action" as contained in Plaintiff's Complaint is redundant. Recognizing that striking portions of pleadings is often viewed as a "drastic" remedy, the striking of Plaintiff's Second Cause of Action is warranted in this case to "clean up the pleadings" and "streamline litigation." *Id.* at *12 (citations omitted). More importantly, no prejudice will ensue by striking Plaintiff's Second Cause of Action.

distress (Count III).[4] Defendants move to dismiss all counts of said Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Defendants' Motion shall be granted in part and denied in part.

## II.     Background

In December 2013, Plaintiff was sentenced in the Delaware County Court of Common Pleas to a one (1) to two (2) year term of imprisonment. (Compl. ¶ 10.) On or about December 8, 2014, Defendant was released on parole from the custody of State Prison and transferred to a Community Education Center located at 1917 W. Oxford Street in Philadelphia, Pennsylvania ("CEC Oxford"). (Compl. ¶ 11.) CEC Oxford is a non-custodial, community reintegration residence for men. (Compl. ¶ 11.) As such, CEC Oxford residents are free to leave the facility. (Compl. ¶ 13.) CEC Oxford is owned by Community Education Centers, Incorporated, which contracts with agents of the Commonwealth of Pennsylvania to house and reintegrate people who have been paroled from custody in State Prison. (Compl. ¶ 11.)

On or about December 16, 2014, Defendant, Parole Officer Braswell, arrested Plaintiff for "hot urine"[5] while he was a resident of CEC Oxford. (Compl. ¶¶ 12, 14.) However, Plaintiff was never asked or required to submit a urine sample and had never submitted a urine sample

---

[4] Plaintiff includes a Seventh Cause of Action subtitled "Punitive Damages." (Compl. ¶¶ 75-79.) Although Pennsylvania courts permit requests for punitive damages to be set forth in separate counts (*Phar-Mor, Inc. v. Coopers & Lybrand*, Civil Action No. 92-2108, Consolidated with C.A. Nos. 92-1938, 92-2131, 92-2193, 1992 U.S. Dist. LEXIS 22163, at *7 (W.D. Pa. Dec. 21, 1992)), it is not proper to assert punitive damages in a separate count in a federal pleading. *PTI Converted Paper Prods. v. Stone Container Corp.*, Civil Action No. 94-CV-6797, 1995 U.S. Dist. LEXIS 10316, at *1 (E.D. Pa. July 21, 1995). Plaintiff properly included his request for punitive damages in the *ad damnum* clauses pertaining to each count contained within his Complaint as well as in his final request for relief. Those requests suffice, rendering Count VII superfluous.
[5] "Hot urine" is urine containing traces of banned or illegal substances.

prior to his arrest by Defendant Braswell. (Compl. ¶ 15.) Nevertheless, Defendant Braswell took Plaintiff into custody and transferred him to the Kintock parole violation center located at 301 E. Erie Avenue in Philadelphia, Pennsylvania ("PVC Kintock"). (Compl. ¶ 12.) Unlike CEC Oxford, PVC Kintock is custodial—its residents are not free to leave. (Compl. ¶ 13.) PVC Kintock is jointly administered by the Pennsylvania Department of Corrections ("DOC") and the Pennsylvania Board of Probation and Parole ("PBPP") for the commitment of non-violent, technical parole violators. (Compl. ¶ 17.)

On or about December 20, 2014, Plaintiff was violently assaulted while an inmate of PVC Kintock. (Compl. ¶ 18.) He was transferred by ambulance to a local hospital emergency room. (Compl. ¶ 18.) When Plaintiff left the emergency room, he was not escorted and elected to return to his home, instead of PVC Kintock. (Compl. ¶ 18.) Consequently, Plaintiff was charged with absconding and escape, and a warrant was issued for his arrest. (Compl. ¶¶ 19, 20.)

On February 25, 2015 Plaintiff was arrested by the Pennsylvania State Police for absconding and escape. (Compl. ¶ 21.) Bail was set at Fifty Thousand Dollars ($50,000.00) on the escape charge. (Compl. ¶ 21.) Plaintiff posted bail but remained in custody on the absconding charge because it was considered a parole violation, for which there is no bail. (Compl. ¶ 21.) A preliminary hearing was held on the escape charge on April 1, 2015, and Plaintiff was held for court. (Compl. ¶ 22.)

On April 28, 2015, the PBPP issued a decision that Plaintiff should be: (1) detained pending disposition of criminal charges for escape; and, (2) recommitted for six (6) months to a

State correctional institution for technical parole violations.[6] (Compl. ¶ 23.) The bases of the PBPP's decision to recommit Plaintiff were change of residence without permission and unsuccessful discharge from the program. The PBPP did not conclude that a "hot urine" violation had occurred. (Compl. ¶ 23.)

On December 14, 2015, the escape charge was *nolle prossed* after the complaining witness repeatedly failed to appear. (Compl. ¶ 24.) Plaintiff was in custody from February 25, 2015 through December 31, 2015 as a result of the escape and technical parole violation charges. (Compl. ¶¶ 25-26.)

On December 13, 2016, Plaintiff filed the instant civil rights Complaint. His claims arise from his allegedly unjustified arrest for hot urine, transfer from CEC Oxford to PVC Kintock, and from consequences attendant to that transfer. His claims do not dispute the escape and absconding charges for his failure to return to PVC Kintock after discharge from the hospital.

### III. Standards of Review

#### A. Rule 12(b)(1)

Rule 12(b)(1) permits parties to assert, by motion, the defense of lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). However, for the reasons discussed below, Defendants' 12(b)(1) motion is moot.

#### B. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

---

[6] Recommitment for parole violations is pursuant to 61 Pa.C.S.A.§ 6138 (2012).

5

to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. 544, 555 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id. Accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## IV. Discussion

### A. Subject Matter Jurisdiction and Sovereign Immunity

Defendants move to dismiss, in part, pursuant to Fed. R. Civ. P. 12(b)(1). (Defs.' Mot. Dismiss 2.) Although Defendants do not explicitly connect their 12(b)(1) motion with their sovereign immunity defense, this Court understands them to be correlated here, as in other cases. *See, e.g., Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). In his response to Defendants' motion, Plaintiff concedes this issue and stipulates to dismissal of PBPP and Officer Braswell in her official capacity. (Pl.'s Resp. 8.) Accordingly, Defendants' motion regarding this point shall be granted as unopposed.

**B.    Federal Claim: § 1983 Claim Against Officer Braswell in Her Individual Capacity**

Defendants further move to dismiss Plaintiff's § 1983 claim for damages against Officer Braswell in her personal capacity under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Defs.' Mem. 6.) In support of same, Defendants cite *Preiser v. Rodriguez*[7] for the proposition that Plaintiff's sole federal remedy is a writ of habeas corpus and *Heck v. Humphrey*[8] for the proposition that Plaintiff's claim is technically barred by a favorable termination rule. *Id*.

Section 1983 provides that a plaintiff may bring a lawsuit against a state actor for a violation of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 n. 3 (3d Cir. 2000). A Section 1983 plaintiff must demonstrate that the defendant was personally involved in the alleged violation(s) of his or her federal rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Plaintiff here claims that while on parole at a non-custodial residence, Officer Braswell herself falsely accused Plaintiff of hot urine, arrested him without cause, and transferred him to a less favorable, more restrictive prison, effectively revoking his parole. (Compl. ¶¶ 11-17.) Plaintiff alleges these actions by Officer Braswell ultimately caused Plaintiff to be violently assaulted and injured, and incarcerated at a custodial facility, with undue restrictions on his liberty, for approximately twelve months longer than he would have been otherwise. (Compl. ¶¶ 18, 27, 39-42.) Plaintiff further contends Officer Braswell's action in arresting him without cause constituted an unreasonable seizure in violation of Plaintiff's Fourth Amendment rights,

---

[7] 411 U.S. 475, 500 (1973).
[8] 512 U.S. 477, 487 (1994).

and that Officer Braswell's action in transferring him from CEC Oxford to PVC Kintock unduly deprived him of his liberty without due process of law, in violation of his Fourteenth Amendment rights. (Compl. ¶¶ 39-42, 46, 47.) Thus, Plaintiff asserts these constitutional violations give rise to a cause of action under 28 U.S.C. § 1983. (Compl. ¶¶ 46, 47, 49-54.)

### 1. Plaintiff's Claim Does Not Sound in Habeas

With specific regard to Defendants' argument that Plaintiff's Complaint should be dismissed because Plaintiff improperly brought § 1983 action, whereas he should have brought § 2254 habeas action, said argument is unfounded in this case. The question of whether Plaintiff's Complaint regarding his confinement should take the form of habeas action or § 1983 action requires inquiry as to whether said Complaint has the essential nature of habeas corpus action, or "lies at the core of habeas"; and whether it challenges the fact or duration of confinement, as opposed to solely the conditions of confinement.

In support of their contention, Defendants rely upon the *Preiser* holding, and argue that challenges to a prisoner's confinement should be made in the form of a habeas petition. However, *Preiser* is more nuanced. *Preiser* holds that a prisoner who challenges the *fact or duration* of his or her confinement *and seeks release* must do so by a writ of habeas corpus. 411 U.S. 475, 500 (1973). Defendants herein have not shown that Plaintiff challenges the fact or duration of his confinement, nor have they argued that he seeks release.

"[T]he essence of habeas corpus is an attack by a person *in custody* upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser* 411 U.S. 475, 484 (1973) (emphasis added). Expounding *Preiser*, the Supreme Court explained there is "an exception [to] § 1983's otherwise broad scope for actions that lie 'within

8

the core of habeas corpus,' *i.e.*, where a state prisoner requests present or future release. Section 1983 remains available for procedural challenges where success *would not necessarily* spell immediate or speedier release for the prisoner…" *Wilkinson v. Dotson*, 544 U.S. 74, 76 (2005) (internal citations omitted) (emphasis added). The Supreme Court reasoned that when the prisoner's claim would not result in release, it does not lie at "the core of habeas corpus." *Id.* (citing *Preiser* 411 U.S. at 489). Furthermore, the District Court's very jurisdiction over petitions for writs of habeas corpus under 28 U.S.C. § 2254 is contingent upon the petitioner being in the custody of the state when the petition for writ of habeas corpus is filed. *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). In this case, the pleadings indicate Plaintiff's release date precedes his filing date by one year, therefore he was not in custody at the time of filing. (Compl. 1, ¶ 26.) Furthermore, Plaintiff seeks damages, not release. (Compl. 16-17.) Therefore, "the implicit habeas exception" to § 1983's scope does not apply to Plaintiff's claims. *Wilkinson*, 544 U.S. at 76. Accordingly, Plaintiff has properly sought relief under 28 U.S.C. § 1983.

### 2. **Plaintiff's Claim is Not Barred by *Heck***

Defendants next argue Plaintiff's claim is barred by *Heck*'s favorable termination rule. (Defs.' Mem. 6-7.) Said rule provides as follows:

> [A] § 1983 plaintiff cannot seek damages for harm caused by actions the unlawfulness of which would necessarily render the fact or length of his confinement invalid, unless he can prove that the conviction, sentence, or prison disciplinary sanction that resulted from those actions has been reversed, invalidated, or called into question by a grant of federal habeas corpus relief (in other words, terminated favorably to the plaintiff).

*Torres v. Fauver*, 292 F.3d 141, 143 (3d Cir. 2002) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)). The favorable termination rule, which derives from tort law, is intended to "eliminate[] the potential for conflicting resolutions arising from parallel civil and criminal proceedings." *Id*.

9

at 146-47. Therefore, "[t]he favorable termination rule does not apply when a prisoner's § 1983 claims can implicate only the conditions, and not the fact or duration, of his confinement. This is regardless [of] whether he remains in custody … or is no longer in custody." *Id*. at 149-50 (internal citations omitted). Parole "is in legal effect imprisonment." *Anderson v. Corall*, 263 U.S. 193, 196 (1923). *See also Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963) (articulating the "significant restraints" inherent in parole). Although credit for time served under parole may be revoked under certain circumstances, "[w]hile the parolee is out of prison under the parole, he is still serving his sentence." *Jenkins v. Madigan*, 211 F.2d 904, 906 (7th Cir. 1954) (citing *Anderson v. Williams*, 279 F. 822, 827 (8th Cir. 1922)). *See also Skipworth v. United States*, 508 F.2d 598, 600 n.4 (3d Cir. 1975) (finding the view that the parole term is part of the sentence imposed is "consistent with the view generally taken of parole"); *Johnson v. Mondrosch,* 586 F. App'x 871, 874 (3d Cir. 2014) (referring to confinement as a condition of parole); PBPP definition of "Parole," http://www.pbpp.pa.gov/Understanding%20Parole/PD/Pages/N---R-Definitions.aspx (last visited July 14, 2017) (defining parole as "[t]he conditional release from imprisonment of an offender from a correctional facility to serve the remainder of his/her unexpired sentence in the community under supervision as long as (s)he satisfactorily complies with all terms and conditions provided in the parole order.") Thus, Plaintiff's challenge of his transfer from non-custodial, parole confinement back to custodial confinement is not about the fact or duration of confinement. It is a challenge to adjustment in the condition of confinement, based upon an allegedly falsified "hot urine" violation, for which a hearing was never held. Because this Court has no information before it to indicate the PBPP ever made a nonfavorable determination with respect to Plaintiff's arrest for hot urine, any potential for "conflicting

resolutions arising from parallel civil and criminal proceedings" is extinguished and *Heck*'s favorable termination rule does not apply to or bar Plaintiff's claim.

3. **Fourteenth Amendment**

Defendants do not deny that Officer Braswell acted without cause in arresting Plaintiff and transferring him to a less favorable prison. (Defs.' Mem. 2, 9.) Instead, Defendants argue that a prisoner has no liberty interest in remaining in a particular facility within a prison system. (Defs.' Mem. 9.) In other words, Defendants assert there is no due process requirement to show cause before transferring someone in their custody to less favorable confinement.[9] *Id.* However, the question presented here is broader than that framed by Defendants. The due process implications of *all aspects* of Defendants' treatment of Plaintiff, including not just the transfer but the initial arrest for hot urine and Defendants' adjustment of Plaintiff's status, are at issue.

Revocation of Plaintiff's parole status has due process implications. "Revocation of parole demands an informal hearing structured to assure that the finding of a parole violation will

---

[9] Although it is not dispositive, Defendants correctly conclude Plaintiff's transfer, in and of itself, did not require process. Absent a state law to the contrary, the Fourteenth Amendment does not create a due process right for prisoners subject to transfer. *Meachum v. Fano,* 427 U.S. 215, 216 (U.S. 1976). *See also Sandin v. Conner*, 515 U.S. 472, 474 (1995) (holding that "states may under certain circumstances create liberty interests that are protected by the Due Process Clause"). In *Olim v. Wakinekona*, the Supreme Court held the Due Process Clause does not protect a prisoner against transfer within the state prison system because the prisoner's "conviction has sufficiently extinguished [his] liberty interest to empower the State to confine him in any of its prisons." 461 U.S. 238, 244-245 (1983). The Third Circuit Court of Appeals reached a similar conclusion in *Torres,* where a prisoner's "transfer to less amenable and more restrictive quarters did not implicate a liberty interest protected by the Due Process Clause." 292.F.3d at 150. Because Plaintiff herein does not identify a state-created due process requirement or state-created liberty interest in not being transferred, Defendants correctly assert that their *transfer* of Plaintiff does not entitle him to relief. Indeed, Pennsylvania presumes "prisoner transfers further a legitimate penological objective unless a prisoner plaintiff proves otherwise." *Yount v. Pa. Dep't of Corr.*, 966 A.2d 1115, 1121 (2009).

be based on verified facts and the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Anderson v. Pa. Bd. of Prob. & Parole*, No. 08-5408, 2010 U.S. Dist. LEXIS 143048, at *19-20 (E.D. Pa. Aug. 31, 2010) (citing *Morrissey v. Brewer*, 408 U.S. 471, 484 (1972)). Therefore,

> [Although] the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations, …upon arrest, the parolee is entitled to a preliminary hearing before a neutral and independent decisionmaker to determine whether there is probable cause or reasonable ground to believe [] the arrested parolee has committed acts that would constitute a violation of parole conditions.

*Id.* (citing *Morrissey* at 485-86) (internal quotations and citations omitted). *See also* 37 Pa. Code § 71.4 (codifying a parole revocation hearing requirement).

In this case, Plaintiff alleges the PBPP did not find a violation for hot urine after the April 1, 2015 hearing. (Am. Compl. ¶¶ 22, 23.) Plaintiff fails to precisely indicate whether his claim is premised on the fact that the hearing did not address the proffered cause for his first arrest (hot urine), or on the fact that the PBPP found the arrest to be baseless. If the former, Plaintiff shows that he may establish a due process violation because Plaintiff's parole revocation was not supported by the requisite hearing. If the latter, Plaintiff's Fourth Amendment and false arrest claims are well established since the PBPP itself found no cause for Plaintiff's arrest for hot urine. Because Plaintiff's Fourteenth Amendment claim is plausible, Defendants' motion shall be denied.

### 4. Fourth Amendment

Defendants next argue Plaintiff defeats his own Fourth Amendment claim by admitting he absconded after he left the hospital and conceding that doing so was a parole violation. Since

parole violations justify arrest, Defendants reason there was probable cause to arrest Plaintiff. (Defs.' Mem. 8.) However, Defendants' argument concerns Plaintiff's post-hospital arrest, whereas Plaintiff is claiming a violation of his Fourth Amendment rights based on Officer Braswell's arrest of Plaintiff for hot urine, prior to his transfer from CEC Oxford to PVC Kintock. (Am. Compl. ¶ 50.)

Defendants agree that to establish a Fourth Amendment unreasonable seizure claim, a plaintiff must demonstrate that an arrest was made without probable cause. (Defs.' Mem. 8 (signaling *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995)) *See also Pollock v. City of Phila.*, 403 F. App'x 664, 669 (3d Cir. 2010) (articulating the same elements of a Fourth Amendment claim for false arrest)). Defendants also admit they arrested Plaintiff without cause prior to his transfer from CEC Oxford to PVC Kintock. (Defs.' Mem. 2.) Accordingly, Plaintiff has alleged a plausible Fourth Amendment claim based upon Officer Braswell's initial arrest of Plaintiff for an alleged parole violation based upon a non-existent "hot urine" and Defendants motion to dismiss Plaintiff's § 1983 claim based upon said claim shall be denied.

### C. State Law Claims Against Officer Braswell in Her Individual Capacity

Defendants seek dismissal of Plaintiff's state law claims. In support of their motion to dismiss all of Plaintiff's state law claims, they argue said claims are "bared [sic] by sovereign immunity." (Defs.' Mem. 10.) Insofar as Plaintiff claims Officer Braswell is liable for each state law claim in her individual capacity, Defendants' sovereign immunity argument does not apply and therefore is non-responsive. *Lewis v. Clarke*, 137 S. Ct. 1285, 1288 (2017) ("[the Supreme] Court has never held that a civil rights suit under 42 U. S. C. §1983 against a state officer in his individual capacity implicates the Eleventh Amendment and a State's sovereign immunity from

13

suit."). *See also Hafer v. Melo*, 502 U.S. 21, 25 (1991) (distinguishing official-capacity actions, for which immunities "that the governmental entity possesses" are available, from personal-capacity actions, for which the defendant "may assert personal immunity defenses" when appropriate). Defendants also make passing reference to official immunity in defense of Officer Braswell. (Defs.' Mem. 10.) This Court shall address official immunity to the extent applicable in the context of each individual state law claim.

### 1. Unlawful/False Arrest

Defendants seek dismissal of Plaintiff's state law claim of false arrest, arguing the same is precluded by reason of the arrest for absconding. (Defs.' Mem. 8-9.) However, as discussed above, Defendants' argument addresses a subsequent arrest that is not the basis of Plaintiff's claim.

In Pennsylvania, "[a] false arrest is defined as 1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so." *Renk v. City of Pittsburgh*, 641 A.2d 289, 295 n.2 (Pa. 1994) (citing Pennsylvania Suggested Standard Civil Jury Instructions § 13.04). Because Plaintiff alleges and Defendants admit Officer Braswell initially arrested Plaintiff without cause, Plaintiff's claim for false arrest is plausible. (Compl. ¶¶ 64-65; Defs.' Mem. 2, 8.)

To the extent Defendants contend official immunity applies to Plaintiff's false arrest claim, this Court looks to Pennsylvania's Political Subdivision Tort Claims Act:[10]

> An employee of a local agency may claim the defense of official immunity by asserting that his or her conduct "was authorized or required by law, or that [the employee] in good faith reasonably believed the conduct was authorized or

---

[10] 42 Pa.C.S.A. § 8546.

14

> required by law." *Id*.; 42 Pa. Cons Stat. Ann. § 8546(2). If the court determines, however, that the employee's actions constituted "a crime, actual fraud, actual malice or willful misconduct," the employee may not invoke the protection of official immunity. *Id*.; 42 Pa. Cons Stat. Ann. § 8550. In this context, "willful misconduct . . . is synonymous with "intentional tort.'" *Lancie v. Giles*, 132 Pa. Commw. 255, 572 A.2d 827, 830 (Pa. Commw. Ct. 1990) (citing *King v. Breach*, 115 Pa. Commw. 355, 540 A.2d 976 (Pa. Commw. Ct. 1988)). Additionally, "the pursuit of unfounded criminal charges against an individual has long been recognized as 'willfull [sic] misconduct' within the meaning of section 8550." *Thompson v. Wagner*, 631 F. Supp. 2d 664, 688 (W.D. Pa. 2008) (citing *Overstreet v. Borough of Yeadon*, 327 Pa. Super. 291, 475 A.2d 803 (Pa. Super. Ct. 1984)).

*Mazzella v. Marzen*, Civ. No. 13-1516, 2015 U.S. Dist. LEXIS 7301, at *24-25 (M.D. Pa. Jan. 14, 2015) (citing *Mazzella v. Marzen*, Civ. No. 13-1516, 2013 U.S. Dist. LEXIS 165263, at *12-13 (M.D.Pa. Nov. 20, 2013)). Because Plaintiff alleges and Defendants admit Officer Braswell initially arrested Plaintiff without cause, Plaintiff's allegation that Officer Braswell pursued unfounded criminal charges against him is plausible and Officer Braswell is not necessarily entitled to a defense of official immunity as a matter of law. Therefore, Defendants' motion to dismiss Plaintiff's false arrest claim against said Officer in her individual capacity shall be denied. (Defs.' Mem. 2, 8.)

### 2. False Imprisonment

"In the context of an arrest, an actor is liable for false imprisonment when he causes the false arrest of another person." *Renk*, 641 A.2d at 295 n.2. Because Plaintiff has pleaded a plausible false arrest claim against Officer Braswell in her individual capacity, his false imprisonment claim against said Officer in her individual capacity is likewise plausible.

### 3. Malicious Prosecution

Defendants additionally seek dismissal of Plaintiff's claim of malicious prosecution. (Defs.' Mem. 8-10.) In Pennsylvania, "[a] cause of action for malicious prosecution generally requires proof that the defendant (1) instituted criminal proceedings against the plaintiff (2) without probable cause (3) with malice and (4) that the proceedings terminated in favor of the plaintiff." *Tomaskevitch v. Specialty Records Corp.*, 717 A.2d 30, 31 (Pa. Commw. Ct. 1998). *Accord Bourlotos v. Bucks Cty.*, No. 16-01419, 2016 U.S. Dist. LEXIS 79646, at *9 (E.D. Pa. June 20, 2016). "As the name suggests, malicious prosecution requires a prosecution. What occurred prior to the prosecution—that is, the time between arrest and the lodging of formal charges—is not a basis for a malicious prosecution claim." *Bourlotos*, Civ. No. 16-1419, 2016 U.S. Dist. LEXIS 79646, at *9. Because Plaintiff did not allege he was formally charged with a parole violation based on hot urine, and does not allege he was prosecuted for same, his claim for malicious prosecution fails as a matter of law and Defendants' motion to dismiss said claim shall be granted. [11]

### 4. In the Alternative: Negligent Infliction of Emotional Distress

Plaintiff claims in the alternative[12] that Defendant Braswell negligently inflicted emotional distress upon him and Defendants seek dismissal of same. (Compl. ¶¶ 61-62; Defs.' Mem. 10.)

In Pennsylvania, it is well settled that:

> In order to recover for negligent infliction of emotional distress, a plaintiff must prove one of the following four elements: "(1) that the defendant had a

---

[11] This ruling renders moot any relevant immunity argument by Defendants.
[12] *See* Fed.R.Civ.P. 8(d)(2) (setting forth the option and parameters of alternative claims).

> contractual or fiduciary duty toward him; (2) that Plaintiff suffered from a physical impact; (3) that Plaintiff was in a 'zone of danger' and at risk of immediate physical injury; or (4) that Plaintiff had a contemporaneous perception of tortious injury to a close relative." *Doe v. Phila. Cmty. Health Alternatives AIDS Task Force*, 2000 PA Super 6, 745 A.2d 25, 27 (Pa.Super.Ct.2000). Moreover, "a Plaintiff who alleges negligent infliction of emotional distress must suffer immediate and substantial physical harm." *Id*. at 28.

*Johnson v. Caputo*, Civil No. 11-2603, 2013 U.S. Dist. LEXIS 83380, at *35-36 (E.D. Pa. Apr. 30, 2013).

Plaintiff alleges he was violently assaulted while an inmate of PVC Kintock, requiring hospitalization. (Compl. ¶ 18.) Plaintiff therefore alleges physical impact. Inasmuch as Plaintiff does not plead he "suffered immediate and substantial physical harm" as a result of Defendants' actions, said claim fails as a matter of law.

However,

> [A] court must grant leave to amend before dismissing a complaint that is merely deficient. *See, e.g., Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

*Despot v. Keystone Insurers Grp., Inc*., No. 1:CV-08-0166, 2008 U.S. Dist. LEXIS 66696, at *15 (M.D. Pa. Aug. 13, 2008). Accordingly, this Court shall grant Plaintiff leave to amend his alternative cause of action for negligent infliction of emotional distress.

## V. Conclusion

For the reasons set forth above, all claims against Defendant Pennsylvania Board of Probation shall be dismissed with prejudice, as shall all claims against Officer Braswell in her official capacity. Additionally, Defendants' motion to dismiss Plaintiff's Sixth Cause of Action regarding malicious prosecution shall be granted and Plaintiff's Second and Seventh Causes of Action shall be stricken. Defendants' motion to dismiss Plaintiff's First, Fourth, and Fifth Causes of Action shall be denied. Defendants' motion to dismiss Plaintiff's Third Cause of Action—his alternative claim for negligent infliction of emotional distress—shall be granted with leave for Plaintiff to amend said claim.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II    J.